# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| CARL STANLEY FLEMING,<br><br>Plaintiff,<br><br>v.<br><br>LOWELL CLARK et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-1038 DAK<br><br>District Judge Dale A. Kimball |

Plaintiff, Carl Stanley Fleming, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. S*ee* 28 U.S.C.A. § 1915 (West 2010). On March 22, 2010, the court dismissed several named defendants and directed official service of process upon the remaining defendants by the United States Marshals Service. The remaining defendants include numerous officials at the Central Utah Correctional Facility (CUCF) and Mike Otto, a prison contract attorney. On October 7, 2010, all CUCF Defendants except Carlson and George filed a *Martinez* Report addressing Plaintiff's allegations. Before the court are the following motions: Plaintiff's Motion for Subpoena Duces Tecum or Appointment of Counsel; Defendant Carlson's Motion to Dismiss; Defendant George's Motion to Dismiss; Defendant Mike Otto's Motion for Summary Judgment; and, Plaintiff's Motion for Partial Summary Judgment against Mike Otto.

## ANALYSIS

### I. Motion for Appointed Counsel

Plaintiff moves for appointed counsel to represent him in this case. Plaintiff argues that appointed counsel is necessary because Defendants have filed various documents under seal, including Plaintiff's medical records and certain prison regulations. Plaintiff initially objected to the sealed filing based on his mistaken belief that he would not be permitted access to these documents. After learning that he would, indeed, be given a copy of these documents for his personal use Plaintiff withdrew his objection. Plaintiff still contends, however, that appointment of counsel is warranted in this case due to Defendants' ongoing sensitivity about dissemination of sealed documents.

It is well established that plaintiffs in civil cases do not have a constitutional right to counsel. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987). However, a district court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1). *See* 28 U.S.C.A. § 1915(e)(1) (West 2011); *Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). When deciding whether to appoint counsel, the court considers a variety of factors "including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'" *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996). "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir.

1985).

Weighing the above factors, the court concludes that appointed counsel is not warranted here. The factual issues raised here are not especially complex and Plaintiff has clearly demonstrated that he is capable of adequately representing himself in this matter. Moreover, Plaintiff's argument that appointed counsel is necessary to alleviate Defendants' concerns about institutional safety and security is unpersuasive. Plaintiff is under the same obligations with regard to sealed documents as a represented party and may face sanctions, including dismissal of this case, for failure to comply.

Thus, Plaintiff's motion for appointed counsel is denied.

## II. Carlson and George's Motions to Dismiss

Defendants Carlson and George have filed separate motions to dismiss the claims against them on the ground that the Complaint fails to show an affirmative causal link between their actions and Plaintiff's alleged injuries. Defendants also assert that the allegations against them are too tenuous to make out a plausible claim for relief. Finally, Defendants assert that even if an affirmative link were shown they are entitled to qualified immunity because their alleged actions did not violate a clearly established statutory or constitutional right.

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."

*Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Or, in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments. *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). When a civil rights complaint contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55).

## B. Defendant Carlson

Plaintiff's Complaint makes only two specific references to Defendant Carlson. The first is found in the listing of defendants, where Plaintiff generally alleges that while "employed as a property room officer at the Utah State Prison . . . [Carlson] falsified documents to cover-up the confinscation [sic] of Plaintiff's legal papers . . . including private property." (Compl. at 5, 17.) The second reference is found in the lengthy "Argument" section of the Complaint under the heading "COUNT III Retaliation," where Plaintiff states that "Carlson answered a level I grievance . . . wherein she stated that: 'The property unit only received one foot total [of legal papers belonging to Plaintiff] and it was returned to [Plaintiff].'" (Compl. at 18.) Plaintiff asserts that Carlson's statement about the one-foot stack of legal materials being returned to Plaintiff is false, as shown by a conflicting Inmate Property Form which states that the papers were "not found."

Plaintiff's scant allegations are not sufficient to state a plausible claim for relief against Carlson. Even accepting the above allegations as true, they do not support the conclusion that Carlson personally violated Plaintiff's rights or caused his alleged injuries. Importantly, Plaintiff does not clearly state which of his causes of action specifically apply to Carlson, nor does he allege specific facts showing that Carlson's actions satisfied each element of a particular cause of action. Instead, Plaintiff merely implies that Carlson was part of a vague conspiracy to confiscate his property and interfere with his legal access, based solely on a misstatement regarding the disposition of Plaintiff's property. Even assuming, however, that Carlson's statement about the disposition of Plaintiff's property was false, there are no facts showing this misstatement was

anything besides a simple mistake or oversight. Plaintiff's characterization of the misstatement as a "falsification" of the grievance document is purely speculative and conclusory; therefore, it is not entitled to deference by the court. Simply put, Plaintiff has not connected the dots between Carlson's alleged misstatement and any conspiracy or intention to violate Plaintiff's rights.

Thus, the court concludes that the Complaint does not state a plausible claim for relief against Defendant Carlson and her motion for dismissal is granted.

### C. Defendant George

Plaintiff's Complaint identifies Defendant George as a Caseworker at CUCF. In the section of the Complaint listing George as a defendant, Plaintiff states that after Plaintiff was moved to segregated confinement following an incident with prison staff, George "came to [P]laintiff's cell . . . and threatened retaliation if [P]laintiff pursued a grievance, or legal action." Plaintiff further states that "[t]he threatened retaliation was carried out." (Compl. at 4.) In the "Cause of Action" section of the Complaint, under the heading "COUNT III Retaliation," Plaintiff provides some additional details about the alleged conversation with George. Plaintiff states that George prefaced his threat of retaliation by saying "this is off the record," and also told Plaintiff "you're in a battle you can't win." (Compl. at 15.) These are the only factual allegations in the Complaint concerning Defendant George.

Plaintiff's allegations are not sufficient to support a plausible claim for relief against Defendant George. As an initial matter, Plaintiff's allegation that George "threatened retaliation" is vague, to say the least. While Plaintiff purports to quote verbatim other statements made by George during the conversation, Plaintiff does not specifically state what language George used

6

when threatening retaliation against Plaintiff. For instance, Plaintiff does not allege any specific threat made by George. More importantly, although the Complaint makes the conclusory allegation that "[t]he threatened retaliation was carried out," it does not clearly state what the retaliatory action was, or how it came about. Although Plaintiff does state elsewhere that he was moved from CUCF to the Draper prison after he told officials of his intention to file assault charges against Officer McConnell, there is no indication that Defendant George had any involvement with this decision, much less that it was retaliatory. Once again, Plaintiff simply infers causation without providing any specific facts linking the defendant's actions to a cognizable injury.

Thus, the court concludes that the Complaint fails to state a plausible claim for relief against Defendant George and his motion to dismiss is granted.

### III. Otto's Motion for Summary Judgement

#### A. Background

Plaintiff's Complaint alleges that Defendant Otto, a prison contract attorney, denied Plaintiff access to the courts by failing to assist Plaintiff with preparation of certain legal documents, including a Petition for Post-Conviction Relief ("Petition") filed in state court on February 12, 2007. Plaintiff alleges that Otto "refused to provide [Plaintiff] assistance (legal) as stipulated in [Otto's] contract with the Department of Corrections" and that "Otto's omissions ultimately caused Plaintiff's [Petition] to be dismissed." (Compl. at 5.)

Defendant Otto moves for summary judgment asserting that, as a prison contract attorney, his obligation to assist inmates such as Plaintiff is strictly limited by the terms of his contract

with the Utah Department of Corrections, and that he fully complied with those terms. In addition, Otto asserts that Plaintiff has not shown any actual injury directly attributable to Otto's alleged omissions.

### B. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go

beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### C. Facts

Defendant Otto is a licensed attorney in the State of Utah who at all times relevant to this case was under contract with the Utah Department of Corrections (UDC) to provide limited legal assistance to indigent inmates at CUCF. Otto's contract required him to "[d]raft pleadings setting forth inmate legal claims having legal merit," and "[s]ecure case law and other authority relevant to pending legal actions being handled by [him]." (Dkt. 44, Ex. A "UDC Contract" at 10.) Otto was also required to "meet with all offenders requesting legal services to test either the legality of their incarceration or the conditions of their confinement at the facility" and "[p]rovide a candid assessment of their possible action based on the assumption that the facts they present are true or if the facts provided do not provide grounds on which a claim for relief could be granted." (UDC Contract at 9-10.) Mr. Otto's contract prohibited him from assisting inmates "in advancing legal claims that lack merit," or "in actions where another member of the Bar has a preexisting legal obligation to provide the required assistance." (UDC Contract at 11-12.)

In March 2007 Plaintiff met with Mr. Otto regarding a Petition for Post-Conviction Relief that Plaintiff had drafted and filed in state court without asking Mr. Otto for assistance of any kind. On February 15, 2007, Plaintiff's Petition was rejected for failure to comply with Rule 65 of the Utah Rules of Civil Procedure. Plaintiff was given twenty days to file an amended petition and instructed that "once [he] remedied the deficiency noted, the Court will take further action as necessary." (Dkt. no. 39, Ex. E.) After receiving the court's instructions, Plaintiff asked Mr. Otto for assistance in curing his deficient Petition. Plaintiff provided Otto with a copy of the Petition, which Mr. Otto reviewed along with an unpublished Memorandum Decision issued by the Utah Court of Appeals' in September 2005 affirming Plaintiff's jury conviction. (Dkt. no. 39, Ex. G.) Based on his review, Otto determined that several claims presented in Plaintiff's Petition were patently frivolous on their face and that the remaining claims were either barred because they had not been previously raised on direct appeal, or else were meritless because they had already been presented and fully adjudicated. Otto returned the draft petition to Plaintiff with a letter explaining his conclusion that the Utah Court of Appeals decision dismissing Plaintiff's direct appeal was unassailable and that Plaintiff's new claims were either procedurally barred or else meritless. The memorandum also explained that based on the contractual requirement that he "review inmates' claims for merit," Otto would not assist Plaintiff further with the Petition. (Compl., Ex. G at 3.)

Sometime after meeting with Otto in March 2007, but before any of his claims were dismissed, Plaintiff was transferred from CUCF to the Utah State Prison in Draper, Utah. (Dkt. no. 39, Ex. D.) Otto was not under contract to provide legal services to inmates housed at USP

and there is no evidence that Plaintiff ever contacted the Draper contract attorneys. On April 13, 2007, Plaintiff filed a "Motion to Clarify Petition and Conditions Impeding Procedural Compliance" in state court asserting that he was unable to file an amended petition as ordered due to the lack of legal assistance and asking that the court waive compliance. On July 20, 2007, the state court denied Plaintiff's motion to waive compliance, dismissed as frivolous seven of the ten grounds for relief raised in Plaintiff's petition, and gave Plaintiff an additional twenty days to amend his Petition on the three remaining claims.

In August 2007 Plaintiff filed an amended petition, to which the State of Utah was ordered to respond. According to court records, Plaintiff was appointed pro bono counsel from the Utah State Bar in August 2007. Plaintiff's appointed counsel entered an appearance on September 18, 2007, however, Plaintiff filed several pro se motions on September 26, 2007, and his appointed counsel withdrew shortly thereafter. The State subsequently moved for dismissal of Plaintiff's amended petition on the ground that the three remaining claims were either procedurally barred or without merit. A hearing was held on the State's motion to dismiss on February 27, 2008. On March 31, 2008, the court issued a lengthy written opinion addressing Plaintiff's three non-frivolous claims and dismissing them with prejudice. (Dkt. 50, Ex. C.)

### D. Legal Standard for Court Access Claims

It is well-recognized that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S. Ct. 1759 (1981) (quoting *Bounds v. Smith*, 430 U.S. 817, 822, 97

S. Ct. 1491, 1495 (1977)).  In *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491 (1977), the Supreme Court expounded on the obligation to provide access to the courts stating, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Id*. at 828 (footnote omitted). Legal assistance does not necessarily require assistance from a lawyer, however, and may include help from persons such as inmate law clerks, paralegals, law students, volunteer attorneys, or staff attorneys.  *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).

To successfully assert a claim for denial of access to the courts, a prisoner must show (1) the inadequacy of the library or legal assistance furnished, and (2) an "actual injury" resulting from the inadequate facilities or assistance.  *Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174 (1996).  To satisfy the "actual injury" requirement a plaintiff must show "that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).  Finally, the non-frivolous claims involved must be "habeas corpus or civil rights actions regarding current confinement."  *Carper*, 54 F.3d at 616.

### E. Sufficiency of Plaintiff's Evidence

Plaintiff does not assert that UDC's policy of providing inmates limited legal assistance from contract attorneys in lieu of access to a law library is unconstitutional.[1]  Instead, Plaintiff

---

[1] It is clearly established that provision of limited assistance by persons trained in the law, rather than a law library, satisfies constitutional requirements for access to the courts.  *See Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).

asserts that Otto failed to provide adequate assistance as required under relevant caselaw and Otto's contract with UDC, and that this failure hindered Plaintiff's efforts to pursue non-frivolous claims in his petition for post-conviction relief. The court addresses each of these arguments in turn.

### i. Non-Frivolous Claims

Plaintiff makes two primary arguments to support his contention that Otto improperly denied him assistance with non-frivolous claims. First, Plaintiff asserts that Otto was incorrect in his assessment that all of Plaintiff's proposed claims were frivolous or otherwise without "legal merit" and, therefore, did not warrant Otto's assistance. Plaintiff contends that Otto not only failed to do a proper review of Plaintiff's petition and other documents before reaching this conclusion but, also, that Otto intentionally rejected Plaintiff's claims out of personal animosity toward Plaintiff. Plaintiff asserts that this animosity stemmed from an earlier encounter in which Plaintiff confronted Otto about inadequate assistance. That incident resulted in Plaintiff filing a complaint against Otto with the Utah State Bar which was ultimately dismissed. Second, Plaintiff contends that Otto should have helped Plaintiff identify additional substantive claims of which Plaintiff may not have been aware due to his lack of legal expertise.

The question whether Otto's evaluation of Plaintiff claims was legally sufficient highlights an important discrepancy between the legal assistance requirements mandated by federal caselaw and Otto's interpretation of his contract with UDC. As previously discussed, relevant caselaw provides that inmates are entitled to assistance in certain types of cases so long as their claims are "non-frivolous." Under Supreme Court precedent a claim is frivolous only if

13

it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 322-23, 109 S. Ct. 1827, 1830 (1989). Factual frivolousness applies only "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, (1992). A claim is legally baseless if it "alleges the infringement of a legal interest that does not exist or if the named defendants are clearly entitled to immunity." *Neitzke*, 490 U.S. at 327. By contrast, the UDC Contract requires contract attorneys to screen inmate claims for "meritorious legal content" and prohibits providing assistance with "legal claims that lack merit." (UDC Contract-Attachment C ¶¶ 3.B.(2) and 3.I.(1).) The UDC Contract states, however, that "[a] claim is meritorious if it can be supported by a good faith argument for the extension, modification or reversal of existing law."[2] (UDC Contract-Attachment C ¶ 3.B.(2).) Although the UDC Contract's definition of meritorious is similar to the legal standard for "non-frivolous," the contract's additional "merit" language implies a more stringent standard of review than is permitted under relevant caselaw defining the scope of an inmate's right to legal assistance. Otto contends that this discrepancy creates a potential conflict between the contract attorney's legal and contractual obligations and justifies his actions here. The Court disagrees.

Plaintiff has presented sufficient evidence to show that at least three of the claims presented in his draft Petition were not frivolous. After dismissing seven of Plaintiff's ten claims

---

[2] This language is similar to Rule 11 of the Federal Rules of Civil Procedure, which requires litigants to certify that "to the best of [their] knowledge, information and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; . . . ." *See* Fed. R. Civ. P. 11.

as frivolous the state court expressly found the three remaining claims to be non-frivolous and directed the State to respond to them. Although the state court eventually dismissed those claims as well, it did so only after allowing full briefing and a hearing, addressing the merits of each claim, and issuing extensive findings of fact and conclusions of law. While Defendant Otto's summary judgment briefs appear to concede that these claims were "non-frivolous," he contends that they were "otherwise lacking in merit" as defined by the terms of his contract with UDC. The Court strongly rejects this interpretation of the contract. Regardless of any references to screening inmate claims based on merit, the UDC Contract must be read to require contract attorneys to comply with relevant legal standards for provision of legal assistance to inmates. This means providing assistance in applicable cases with any claim that is non-frivolous, regardless of the contract attorney's personal assessment of its likelihood of success on the merits. A contract attorney cannot rely on a strict interpretation of the terms of his contract to absolve him of his obligation to provide assistance in accordance with relevant legal standards.

Regarding Plaintiff's second argument, the Court finds no evidence that Defendant denied Plaintiff legal access by failing to identify additional substantive claims of which Plaintiff was unaware. Plaintiff has not offered any evidence to support his assertion that Otto failed to thoroughly review Plaintiff's Petition and identify potential claims. In fact, Otto's letter to Plaintiff concerning the merits of his Petition shows that Otto thoroughly reviewed Plaintiff's materials and also researched the appeals court decision dismissing Plaintiff's direct appeal. Nor has identified any additional non-frivolous claims which Otto should have gleaned from reviewing Plaintiff's case.

Finally, Plaintiff has not offered sufficient evidentiary support for his assertion that Otto deliberately withheld assistance based on animosity toward Plaintiff. Although Otto's letter refusing assistance to Plaintiff encourages Plaintiff to "be a man"[3] by "apologizing . . . in writing and withdrawing the (totally frivolous) Bar Complaint you have pending against me," there is no indication that Otto's feelings about the bar complaint influenced his decision to deny further assistance. Instead, as explained in the letter, Otto's decision appears to have been based entirely on his opinion regarding the merits of Plaintiff's petition. (Compl., Ex. G at 1.)

### i. Hindrance

Having concluded that the evidence supports Plaintiff's contention that Defendant failed to provide assistance with non-frivolous claims, the court now addresses whether the lack of assistance materially hindered Plaintiff from litigating his claims. Plaintiff's sole argument on this point is that his non-frivolous claims were ultimately dismissed for failure to provide specific references to the trial transcript and that if Defendant had rendered proper assistance Plaintiff would have been able to meet this requirement. This assertion is not supported by the record.

The record shows that Plaintiff's non-frivolous claims were each addressed and dismissed by the state court on the merits, not on technical grounds. In its memorandum opinion dismissing Plaintiff's claims the state court held: "Most of petitioner's claims fail because they already were or could have been raised on appeal. The only claim that remains is whether

---

[3] As explained in Otto's letter, this somewhat provocative phrase was chosen based on Plaintiff's use of the same taunt in previous correspondence with Otto. In this context, Defendant's decision to throw the words back at Plaintiff, while perhaps misguided, does not show that Otto harbored any extreme animosity toward Plaintiff.

appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel." (Dkt. no. 50, Ex. D ¶ 4.) The opinion went on to conclude that none of Plaintiff's claims of ineffective assistance by appellate counsel were valid, either because counsel's actions were appropriate or because there was no reasonable probability that a different approach would have led to a different result. Nowhere does the opinion say that any of Plaintiff's claims were dismissed due to failure to provide specific references to the trial transcript, as Plaintiff contends. Moreover, this court is extremely skeptical of Plaintiff's assertion that he was unaware of the basic requirements for filing a petition for post-conviction relief, including the requirement to cite relevant transcripts. If that were true Plaintiff likely would have consulted with the contract attorney in the first place, before filing the petition on his own. Finally, the record shows that Plaintiff had other avenues available for obtaining legal assistance, including the Draper contract attorneys and the pro bono counsel provided by the Utah State Bar, but Plaintiff failed to take full advantage of those resources. Thus, there is no evidentiary support for Plaintiff's assertion that "[b]ut for the refusal of Defendant Otto to render assistance . . . Plaintiff's claims would have survived the state's motion for summary dismissal." (Dkt. no. 39 at 6.)

Although Plaintiff has shown that he was denied legal assistance with non-frivolous claims, the record does not support the conclusion that Plaintiff was substantially hindered from litigating those claims. Instead, the record shows that Plaintiff successfully presented those claims to the state court and received a decision on the merits. Because Plaintiff was not substantially hindered from pursuing his non-frivolous claims he cannot show a denial of access to the courts. Thus, Defendant Otto is entitled to summary judgment.

**ORDER**

Based on the forgoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Subpoena Duces Tecum or Appointment of Counsel (Dkt. no. 66) is **DENIED**;

(2) Defendant Carlson's Motion to Dismiss (Dkt. no. 27) is **GRANTED**;

(3) Defendant George's Motion to Dismiss (Dkt. no. 31) is **GRANTED**;

(4) Defendant Otto's Motion for Summary Judgment (Dkt. no. 51) is **GRANTED**;

(5) Plaintiff's Motion for Partial Summary Judgment against Defendant Otto (Dkt. no. 38) is **DENIED**; and,

(6) the Clerk's Office shall provide a copy of this Memorandum Opinion and Order to the Utah Attorney General's Office for review, in light of this opinion and relevant caselaw, of Utah Department of Corrections contracts for provision of legal services to inmates.

DATED this 11th day of March, 2011.

BY THE COURT:

_Dale A. Kimball_
Dale A. Kimball
United States District Judge