**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| CARL STANLEY FLEMING,<br><br>        Plaintiff,<br><br>    v.<br><br>LOWELL CLARK et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09-CV-1038 DAK<br><br>District Judge Dale A. Kimball |

Plaintiff, Carl Stanley Fleming, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2012). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id*. § 1915. Before the Court is Defendants' Motion for Judgment on the Pleadings.

## ANALYSIS

**I. Legal Standard**

Rule 12(c) provides that "after the pleadings are closed . . . a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings filed by a defendant is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken

as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments. *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). When a civil rights complaint contains only "bare assertions" involving "nothing more than a formulaic recitation of the elements of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).

**II.  Defendants' Rule 12(c) Motion**

Each of the remaining Defendants in this case, Captain Mel Coulter, Lieutenant Darwin Johnson, and Officers Troy Kennedy, Clayton James, and Randal McConnell, move for judgment on the pleadings under Rule 12(c).[1]  Plaintiff's Complaint alleges three causes of action under 42 U.S.C. § 1983: (1) excessive force in violation of the Eighth Amendment; (2) denial of access to the courts; and (3) retaliation.  Plaintiff's claims stem from a "kicking incident" in which Plaintiff placed his face against the outside of the control room window and a guard kicked on the glass from the inside allegedly injuring Plaintiff.  Plaintiff asserts that this incident led to a search of Plaintiff's cell and the seizure of some of his legal papers.  Plaintiff also alleges that Defendants retaliated against him for filing grievances about the incident.  Plaintiff seeks compensatory and punitive damages and "all other damages and costs allowed by law."

Defendants assert that Plaintiff's allegations, even if accepted as true, do not state a plausible claim for relief.  Defendants also contend that Plaintiff fails to allege an affirmative causal link between Defendants' actions and Plaintiff's alleged injuries.  Finally, Defendants assert that even if Plaintiff could make out a plausible claim, Defendants are entitled to qualified immunity because at the time Plaintiff's claims arose it was not clearly established that Defendants' actions were unlawful.  The Court will first review the allegations in Plaintiff's Complaint to determine whether they are sufficient to state a plausible claim against any of the remaining defendants before reaching Defendants other arguments.

---

[1]  The Court previously dismissed several named defendants and claims from this action. (Doc. no. 68.)

### A. Plaintiff's Allegations[2]

Plaintiff's Complaint alleges that on March 13, 2006,[3] while confined at the Central Utah Correctional Facility, he went to the control room to speak to officers about releasing his cellmate from their cell. After being unable to get an officers' attention by calling out and tapping on the glass, which was heavily tinted to prevent inmates from seeing inside, Plaintiff placed his face up against the glass and cupped his hands around his eyes so he could see if anyone was inside. While Plaintiff's face was against the glass Officer McConnell kicked the glass from the inside right where Plaintiff's face was located. Plaintiff alleges that this caused his head to snap back and that he "was momentarily stunned, disoriented, and in extreme pain." (Compl. at 11.) Plaintiff then asked why Officer McConnell kicked the glass and McConnell stated, "Oh, did I kick you in the face? Sorry about that." Plaintiff then heard McConnell and the other officers in the control room, Officers Kennedy and James, laughing. When asked what he wanted, Plaintiff said that he needed his cell door opened so his cellmate could come out. Officer Kennedy responded that Plaintiff's cellmate was not allowed out until later, to which Plaintiff replied that he had documentation to the contrary which he offered to go get it from his cell. Officer Kennedy instructed Plaintiff to go get the paper and opened Plaintiff's cell door so

---

[2] These allegations are drawn directly from Plaintiff's Complaint and the attached exhibits. The allegations are construed liberally and are accepted as true for purposes of this motion.

[3] Plaintiff's Complaint appears to incorrectly identify the date of this incident as March 16, 2006, however, Plaintiff's grievances and documentation included with the Complaint identify the correct date as March 13, 2006.

he could enter.  Once inside, however, Officer Kennedy closed the door, locking Plaintiff inside.  Plaintiff then called the control room using the intercom in the cell and asked why he was locked in after being told to go get the paper.  Officer Kennedy responded that Plaintiff would have to stay in his cell until "movement" when he could bring the paperwork back to the control room.  Frustrated, Plaintiff began discussing with his cellmate the problems he had experienced with the officers and his intention to file grievances or lawsuits against them.  Plaintiff states that after overhearing this conversation via the intercom Officer Kennedy began teasing and taunting Plaintiff, saying he wasn't afraid of Plaintiff's threats because nobody would believe Plaintiff anyway.  During "movement" Plaintiff again requested to be released, Officer Kennedy denied the request stating that Plaintiff was being placed on lockdown for a "cooling off period."

      Plaintiff alleges that Officer Kennedy then placed the entire section on lockdown and, along with Officer James, conducted a search of Plaintiff's cell.  The search took almost two hours, during which Plaintiff and his cellmate were placed in the shower.  During the search the officers "tossed" the entire cell and confiscated some of Plaintiff's property, including a grievance Plaintiff was writing concerning the incident and trial transcripts Plaintiff was using to prepare a petition for post-conviction relief.  When Plaintiff asked why the officers took these items they denied taking anything.  Plaintiff was not given a property form showing that items were taken from his cell.

      Later that evening Plaintiff complained that his head hurt and requested medical attention.  Medical personnel were informed of Plaintiff's complaints and Plaintiff was escorted to the infirmary about thirty minutes later.  (Compl. Ex. D at 3.)  Plaintiff alleges that while being

5

escorted by Officers Kennedy and James he was unnecessarily jostled and manhandled. Plaintiff further states that after his medical visit Officer Kennedy grabbed Plaintiff by the back of his neck while handcuffed, pushed his face up against a glass window, and told Plaintiff that if he filed grievances or lawsuits about the earlier incident he would receive a major writeup. The Complaint does not include any information regarding any medical diagnosis or treatment Plaintiff received.

On March 14, 2006, Officer James filed a major disciplinary writeup regarding the incident from the previous day. Plaintiff was charged with Disorderly Conduct/Reckless Endangerment for allegedly being argumentative and making threats against officers. (Comp. Ex. F(1).) A disciplinary hearing was held regarding this matter on April 19, 2006, and Plaintiff was found not guilty. No remedial action was taken.

Plaintiff filed a grievance regarding the "kicking incident" on March 28, 2006. Plaintiff subsequently filed a complaint with the Sanpete County Sheriff's Office seeking criminal charges against the officers involved. Detective Lloyd of the Sanpete County Sheriff's Office conducted a thorough investigation into the incident, including obtaining statements from each of the officers involved. Based on Detective Lloyd's investigation the Sanpete County Attorney's Office declined to file any charges. (Compl. Ex. E.)

On May 5, 2007, Plaintiff was transferred to the Special Management Unit at CUCF for fighting with another inmate. An unnamed officer allowed Plaintiff's cellmate to pack up Plaintiff's property for him. When Plaintiff received his property on May 10, 2007, he noticed that some of his legal documents and materials were missing, including two books and some

caselaw relevant to the post-conviction relief petition Plaintiff was preparing to file. Plaintiff filed a grievance about these missing legal materials and two days later he was transferred to the Utah State Prison. During this transfer nine of Plaintiff's books were lost as well as a large stack of legal materials, including the transcripts from Plaintiff's criminal trial. Plaintiff states that he already replaced these transcripts once following the March 2006 incident, although he was eventually reimbursed for them by the prison based on his grievance. Plaintiff alleges that Captain Coulter and Lieutenant Johnson were each aware these materials were lost but failed to find or replace them, further delaying Plaintiff's post-conviction relief petition. Plaintiff did eventually file a post-conviction relief petition, which he alleges was dismissed as untimely.

### III. Sufficiency of Plaintiff's Complaint

#### A. Eighth Amendment Claim

Count One of Plaintiff's Complaint alleges that Plaintiff was subjected to "excessive force and cruelty" by being kicked through the glass, by being handled roughly on the way to the infirmary, and by being forced up against the glass following his medical exam. Although Plaintiff does not specifically reference the Eighth Amendment, his claims clearly fall under the Cruel and Unusual Punishments Clause.

##### i. Legal Standard

"Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992). The Supreme

Court has identified several factors relevant to the determination whether a particular use of force can be considered "malicious or sadistic," these include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and, (4) any efforts made to temper the severity of a forceful response. *Id*.

It is also well recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the [constitution]." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989) (citation and quotation marks omitted). "*De minimis* applications of force are necessarily excluded from the cruel and unusual punishment inquiry." *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Although a prisoner need not demonstrate a significant injury to make out a constitutional claim, the lack of any significant injury is relevant to whether the force used was *de minimis*. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). Thus, "[a]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994).

### ii. Sufficiency of Eighth Amendment Allegations

The allegations in Plaintiff's Complaint are not sufficient to assert a plausible claim of cruel and unusual punishment under the Eighth Amendment. Regarding the kicking incident, Plaintiff's allegations do not support the conclusion that Defendant McConnell acted maliciously or sadistically, or that he actually intended to harm Plaintiff. Instead, the circumstances alleged support the conclusion that McConnell merely intended to stop Plaintiff from looking into the

control room. If McConnell truly intended to injure Plaintiff it is unlikely he would try to do so through a window. Moreover, Plaintiff has not alleged any facts showing that he suffered any actual injury as a result of the kick that was more than *de minimis*. Despite Plaintiff's bare allegations that the kick caused his head to "snap back" and that he was "momentarily stunned, disoriented, and in extreme pain," the allegations in the Complaint show that Plaintiff essentially continued interacting with Defendants as he had previously. Plaintiff did not immediately complain of any injury, instead he continued speaking and acting normally. According to the Complaint it was only much later, after the other events occurred, that Plaintiff first complained about having a headache. Moreover, although Plaintiff alleges that he went to the infirmary he does not state what diagnosis was made or what treatment he received. Even accepting Plaintiff's bald assertion that his headache resulted from the kicking incident, such an injury is clearly *de minimis*.[4]

Similarly, Plaintiff's allegations about being manhandled and forced against a window are insufficient to state an Eighth Amendment claim. Plaintiff does not allege any physical injury resulting from these actions. In fact, Plaintiff's descriptions of the force used show that it amounted to little more than jostling or manhandling. While Plaintiff may have been handled more roughly than usual there is no indication that he was harmed or that he was placed in significant danger. Moreover, Plaintiff's allegations show that officers had reason to suspect

---

[4] In the Injury section of his Complaint Plaintiff states that his "migraine headaches have become aggravated and are more frequent" and that he "suffers from cervical spinal problems including nerve entrapment." (Compl. at 20.) However, there are no facts in the Complaint at all to support these allegations.

Plaintiff might act out based on his earlier frustration and statements to his cellmate, which would also explain the more forceful handling.

Thus, the Court concludes that Plaintiff's allegations are insufficient to state a plausible claim under the Eighth Amendment.

### B. Legal Access

Plaintiff's Complaint alleges denial of access to the courts based on Defendants' loss or confiscation of legal materials from Plaintiff's cell, including transcripts of Plaintiff's criminal trial. Plaintiff alleges that he needed the trial transcripts to prepare a petition for post-conviction relief ("Petition") which he intended to file in state court. Plaintiff further asserts that the loss of the transcripts delayed the filing of his Petition, causing it to be dismissed as untimely.

Although Plaintiff's allegations appear sufficient on their face to state a claim for denial of access to the courts, the Court has already determined that the dismissal of Plaintiff's state court Petition does not support a legal access claim. In its Memorandum Decision and Order granting Defendant Otto's motion for summary judgment, entered in this case on March 14, 2011 (doc. no. 68), the Court concluded that the Petition was not dismissed as untimely or on any other technical grounds; instead, each of Plaintiff's claims were addressed and dismissed by the state court on the merits. (*Id*. at 16-17.) Thus, the dismissal of the Petition does not show that Plaintiff was significantly hindered from pursuing a non-frivolous "habeas corpus or civil rights action[] regarding [his] current confinement." *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). This determination precludes Plaintiff from pursuing a legal access claim based on the dismissal of his state court Petition.

Thus, the Court concludes that Plaintiff's allegations are insufficient to state a claim for denial of access to the courts.

**C. Retaliation**

Plaintiff's Complaint alleges that Defendants retaliated against Plaintiff for filing grievances, in violation of the First Amendment, by "deriding and provoking" Plaintiff after he stated his intention to grieve the kicking incident, and by searching his cell, confiscating his papers and repeatedly placing him on lockdown. Plaintiff does not specifically state how this impacted his ability to file grievances or exercise any other constitutionally protected activity.

The Tenth Circuit has held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights," *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006), it has also noted that "[s]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals," *id*. at 1264. To state a viable retaliation claim a plaintiff must allege facts showing: "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Howards v. McLaughlin*, 634 F.3d 1131, 1144 (10th Cir. 2011) (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir.2009))(further citations and quotations omitted).

Under this standard the plaintiff bears the burden of proving that he was engaging in constitutionally protected activity. A plaintiff cannot satisfy the first element if his alleged

protest was frivolous or if he had no right to engage in the alleged activity. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 352–53 (1996) (holding prisoners' constitutional right to access courts not violated if claim interfered with was frivolous). Regarding the second element, it is not sufficient that the plaintiff prove that he would be chilled by the conduct; instead, the test is objective: Would a person of "ordinary firmness" be chilled. This test also specific to the type of "person" involved—a citizen, employee, or prisoner. *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (noting test encompasses "similarly situated" person of ordinary firmness); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (articulating test as "inmate of ordinary firmness"); *Perkins v. Clayton Twp.*, No. 2:08-CV-14033, 2009 WL 3498815 (E.D. Mich. Oct. 23, 2009) (unpublished) ("[P]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens before an action taken against them is considered adverse." (citations and quotations omitted)). Finally, a plaintiff must allege facts howing but-for causation—that the retaliatory purpose is the "decisive factor" in the adverse action. *Strope v. McKune*, No. 09-3283, 2010 WL 23332079 (10th Cir. June 11, 2010) (unpublished).

Even accepting that Plaintiff's grievances were not frivolous, making them constitutionally protected conduct, Plaintiff has not alleged sufficient facts to state a plausible retaliation claim. Plaintiff allegations do not show that Defendants did anything that would chill an inmate of ordinary firmness from continuing to file grievances or lawsuits. There is certainly no indication that Defendants' conduct had such an effect on Plaintiff, as he allegedly continued to file numerous grievances regarding both the kicking incident and the loss of his legal

materials. Moreover, the Court's own experience indicates that prisoners are ordinarily not easily dissuaded from filing grievances based on mere taunting or harassment by guards. In fact, the Court routinely receives lawsuits from prisoners challenging such behavior.

While Defendant Kennedy's alleged threat to give Plaintiff a major write-up might have had a more chilling effect, Plaintiff's conclusory allegations regarding this incident do not "give the Court reason to believe that [Plaintiff] has a reasonable likelihood of mustering factual support for [this] claim[]." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). As other courts have noted, "[b]ecause prisoner retaliation claims are 'easily fabricated and pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 58 (1st Cir. 2011) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal alterations omitted)). Here, Plaintiff offers nothing more than his own brief account of the incident and does not include sufficient details to show a factual basis for a retaliation claim.

Thus, the Court concludes that Plaintiff's allegations are insufficient to state a plausible claim for retaliation in violation of the First Amendment.

**D. Conclusion**

Having concluded that Plaintiff's allegations are insufficient to state a claim on which relief can be granted, the Court will not address Defendants' "affirmative link" and qualified immunity arguments. Moreover, given the fact Plaintiff has already filed a thorough twenty-two page Complaint with an additional thirty-seven pages of exhibits, the Court believes it would be

futile to allow Plaintiff an opportunity to amend his pleading at this late stage. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). This is clearly not a case where Plaintiff simply forgot "some important element that may not have occurred to him." *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990).

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Judgment on the Pleadings (doc. no. 93) is **GRANTED**; and,

(2) this case is **CLOSED**.

DATED this 21st day of September, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge